UNITED STATES R. R. LABOR BOARD et al. v. PENNSYLVANIA R. R. CO.[*]

(Circuit Court of Appeals, Seventh Circuit. April, 1922.)

No. 3139.

1. **Constitutional law** ⊚═46(1)—**Constitutionality of statute not decided till involved.**

The question of the constitutionality of Transportation Act Feb. 28, 1920, tit. 3, if it makes the decisions of the Labor Board as to wages and working conditions binding on the carriers, and enforceable by appropriate proceeding, will not be decided, where no such proceeding is involved, but the action of the board complained of is one to further an agreement between carriers and their employés, with the probable alternative, merely, that, if ultimately they fail to agree, the board will decide on and prescribe rules and working conditions.

2. **Master and servant** ⊚═69—**Either party may take dispute between carrier and employés to Labor Board.**

Notwithstanding Transportation Act Feb. 28, 1920, tit. 3, § 301, providing that, in case any dispute between carrier and employés be not decided in conference between the parties as there urged, it shall be referred "by the parties" to the board authorized to deal with it, they failing to do so, it may under section 307 be taken by either party to the Labor Board for determination.

3. **Master and servant** ⊚═69—**Dispute existing before enactment of Transportation Act cognizable by Labor Board.**

A dispute between carrier and employés as to wages and working conditions, though existing before enactment of Transportation Act Feb. 28, 1920, and creation of Labor Board under title 3, § 304, is none the less one cognizable by the board, if continuing to exist after the board began to function.

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[*] Certiorari granted 258 U. S. —, 43 Sup. Ct. 98, 67 L. Ed. —.

**4. Master and servant �köö69—Labor Board's jurisdiction not dependent on submission of dispute.**

A dispute between carrier and employés as to wages and working conditions, cognizable by the Labor Board under Transportation Act Feb. 28, 1920, tit. 3, being before the board at once after its creation, and so treated by both parties to the dispute, it is immaterial, as regards the board's jurisdiction, whether the dispute got there by ex parte or joint submission, or on the·board's initiative.

**5. Master and servant �köö69—Labor Board may make temporary order as to part of dispute.**

The whole matter of a dispute between carrier and employés as to wages and working conditions, existing on enactment of Transportation Act Feb. 28, 1920, being before the Labor Board under title 3, it could make such temporary order as in its judgment the exigencies of the case required, and so, in deciding the matter of wages, make an order that existing rules and working conditions remain as they were under the national agreement, till further hearing and final determination on that branch of the dispute.

**6. Master and servant ⊜köö69—Labor Board's jurisdiction not lost by its request to parties to confer on pending dispute.**

A dispute between carriers and employés as to rules and working conditions being in fact pending before the Labor Board under Transportation Act Feb. 28, 1920, tit. 3, it did not lose jurisdiction by requesting the parties to confer and, if possible, to agree thereon.

**7. Master and servant ⊜köö69—Labor Board may determine character of representatives of employés settling dispute.**

Where continued jurisdiction of the Labor Board over a dispute between a carrier and its employés, pending before the board under Transportation Act Feb. 28, 1920, tit. 3, is denied by the carrier on the ground of settlement thereof between the parties, the representative character of those purporting to act in such settlement as representatives of the employés, denied by the employés, is a matter for determination by the board.

**8. Master and servant ⊜köö69—Labor Board may prescribe rules for electing representatives of employés to settle dispute.**

The Labor Board, by Transportation Act Feb. 28, 1920, given duties of determining disputes between carriers and employés, and by section 308 (4) thereof authorized to make regulations necessary for the efficient execution of the functions so vested in it, may by general rule or otherwise indicate how representation of the employés shall be manifested and election of their representatives conducted, though the carrier may refuse to negotiate with the representatives, thus leaving the dispute for the board to determine.

**9. Master and servant ⊜köö69—Labor Board not ousted of jurisdiction of dispute by carrier promulgating rules or by notice of Association of Railway Executives.**

The Labor Board cannot be ousted of authority under Transportation Act Feb. 28, 1920, tit. 3, over a dispute as to rules and working conditions between carriers and employés, pending before it, either by a carrier promulgating on its own motion new rules and working conditions, or by notice of the Association of Railway Executives to labor organizations that it had made recommendation to the member roads that negotiations be handled by the management and employés of each road.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George T. Page, Judge.

Suit by the Pennsylvania Railroad Company against the United States Railroad Labor Board and its members. From a decree granting an injunction, defendants appeal. Reversed, with direction to dismiss.

For opinion below, see 282 Fed. 693.

The appeal is by the United States Labor Board and its members from a decree in the suit of the Pennsylvania Railroad Company, enjoining the board and its members from proceeding under section 301 of the Transportation Act (41 Stat. 469), from determining a dispute concerning rules and working conditions, unless there has been a joint submission of the dispute to the board by appellee carrier and its employees, and from making publication of any decision as to matters submitted, contrary to the injunctional order.

Under the "Possession and Control Act" of August 29, 1916 (Comp. St. §§ 8604aaa-8604w), the President, on December 28, 1917, took over most of the railroads of the country, including those of appellee, and operated them through the Director General of Railroads until March 1, 1920, when pursuant and subject to the Transportation Act of February 28, 1920 (41 Stat. 456), the railroads reverted to their respective owners. Increases in wages and changes in rules and working conditions had been made by the Director General of Railroads under so-called national agreements negotiated between the Director General of Railroads and organizations representing employees, and further increases and changes had been demanded by the employees, through these organizations. The further demands were by the Director General transmitted to the President in August, 1919, and were pending and undetermined at the time of the enactment of the Transportation Act.

It seems that at the suggestion of the President conferences for the adjustment of these matters had been carried on from March 10 to April 1, 1920, between the employers and organizations representing the employees, but without success, and when the Railroad Labor Board was created by title 3 of the Transportation Act and its members confirmed by the Senate (April 15, 1920), it assumed jurisdiction of such demands, and proceeded to deal with them. In the hearing, which lasted about three months, the carriers (including appellee) and the organizations assuming to represent the employees participated. The board rendered its decision, covering wage demands, July 20, 1920 (Decision No. 2), and in the decision it stated:

"There are in the dispute as presented questions involving rules and working conditions, some of which are interwoven with and materially affect earnings and wages. Adequate investigation and consideration of these questions would demand time. Existing conditions required that the board should make as early decision of the wage question as practicable. For that reason it has been necessary—and both parties to the controversy have indicated it to be their judgment and wish—that the board should separate the questions involving rules and working conditions from the wage questions. Accordingly the board has not undertaken herein to consider or change the rules and agreements now existing or in force by the authority of the United States Railroad Administration or otherwise, and this decision will be so understood and applied.

"The board assumes as the basis of this decision the continuance in full force and effect of the rules, working conditions, and agreements in force under the authority of the United States Railroad Administration. Pending the presentation, consideration, and determination of the questions pertaining to the continuation or modification of such rules, conditions, and agreements, no changes therein shall be made, except by agreement between the carrier and employees concerned. As to all the questions with reference to the continuation or modification of such rules, working conditions, and agreements, further hearings will be had at the earliest practicable date, and decision thereon will be rendered as soon as adequate consideration can be given.

"It is further declared that this board, finding it necessary to adopt a basis for the rates and advances decided on, has adopted the rates established by or under the authority of the United States Railroad Administration. The in-

tent of this decision is that the named increase, except as otherwise stated, shall be added to the rate of compensation established by and under the authority of the United States Railroad Administration."

The decision awarded the employees substantial wage increases, effective as of May 1, 1920, and provided that the wages fixed were on the basis that working conditions in all branches of the service should remain in effect until changed as provided by the Transportation Act.

April 14, 1921, the board promulgated its decision No. 119 respecting rules and working conditions, which begins as follows:

"This decision determines the undecided portion of the dispute between the carriers and organizations of their employees referred to the Labor Board, April 16, 1920. That dispute was what should constitute reasonable wages and working conditions on the carriers parties thereto. On July 20, 1920, this board decided the wage portion. It now decides upon a method of arriving at rules regulating working conditions." Pages 69, 70.

In the decision it is stated that "the carriers parties hereto maintain that the direction of this board in decision No. 2, extending the national agreements, orders, etc., of the Railroad Administration as a modus vivendi should be terminated at once, and that the matter should be remanded to the individual carriers and their employees for negotiation and individual agreement." The decision finds that it would not be proper to extend indefinitely the national agreements, but that it would be inadvisable to terminate them at once, as thereby many carriers and their employees would be without rules regulating working conditions, and it was ordered that the extension, as provided in decision No. 2, end on July 1, 1921. The decision called upon the officers of the carriers and the organizations of employees to designate representatives to confer and decide so far as possible respecting rules and working conditions for each such carrier, such conferences to begin at the earliest possible date, and to keep the Labor Board informed of agreements and disagreements so that the board may know prior to July 1, 1921, what portion of the dispute has been decided. It was provided in the decision that rules agreed to by such conferences should be consistent with certain stated principles. Appellee, while resisting the right of the board to impose upon it any limitations or principles respecting the subject, objects more specifically to principles numbered 5 and 15, which are:

"The right of such lawful organization to act toward lawful objects through representatives of its own choice, whether employees of a particular carrier or otherwise, shall be agreed to by management."

"The majority of any craft or class of employees shall have the right to determine what organization shall represent members of such craft or class. Such organization shall have the right to make an agreement which shall apply to all employees in such craft or class. No such agreement shall infringe, however, upon the right of employees not members of the organization representing the majority to present grievances either in person or by representatives of their own choice."

June 27, 1921, the Labor Board promulgated an addendum to decision No. 119, reciting that pursuant to decision No. 119 some of the carriers had reached agreements with their employees and that some had not, setting forth certain rules and conditions to be effective July 1, 1921, upon such railroads as had not reached an agreement with their employees, to remain in force until final decision by the Labor Board on the subject of rules and working conditions.

July 26, 1921, decision No. 218, was promulgated by the board. This was on an ex parte complaint or submission to the board by the Federated Shop Crafts of the Pennsylvania System, and from the decision it appears that on May 24, 1921, after the promulgation of decision No. 119, representatives of appellee met officers of System Federation No. 90, which purports to be an organization of the employees of the Pennsylvania System, affiliated with the American Federation of Labor, and at such meeting the Federation No. 90 officers stated that they represented a majority of the employees of appellee's system, and were prepared to negotiate rules pursuant to decision No. 119; that the representatives of the carrier refused to negotiate with them on the ground that there was not proof that Federation No. 90 represented a major-

ity of the employees, and the representatives of the carrier announced appellee had prepared and would send out ballots whereon the employees should designate their representatives; that the officers of Federation No. 90 objected to this ballot, because it was not in accordance with the principles 5 and 15 of decision No. 119, in that it made no provision for representation by an organization, but specified that those selected must be natural persons, and such only as are employees of appellee, and provided that the representatives of the employees be selected regionally rather than from the whole system; that it was then proposed by the officers of Federation No. 90 to amend the ballot, so as to permit employees to vote for an organization to represent them if they so desired, which proposal the representatives of this carrier declined; that the officers of Federation No. 90 thereupon issued a ballot of their own, on which System Federation No. 90 appeared as the employees' representative. The result of this was two separate elections, one at which the ballots prepared by the company were voted, and at the other the ballots prepared by System Federation No. 90, providing only for representation by Federation No. 90. Decision No. 218 found that neither ballot was proper, and that both elections were void, that those so chosen were not the representatives of the employees, and that rules and working conditions consented to by either of them were void. A new election of representatives of the employees was ordered, rules for the election prescribed, and a form of ballot specified, making provision for voting for an organization as representative or for individuals. It appears that, after the holding of the first election, appellee's representatives and the representatives chosen at the election whereat were voted the ballots prepared by appellee agreed on rules and working conditions, which thereupon were put in force on appellee's system.

Appellee thereupon applied to the board to vacate its decision No. 218, and on September 16, 1921, the board promulgated a further decision declining so to vacate, but permitting appellee to be heard on certain questions, among them the question of whether the ratification of the rules was by representatives of the employees fairly selected by a majority of such crafts. No election under the direction of decision No. 218 appears from the record to have yet been held.

Blackburn Esterline, Asst. Sol. Gen., of Washington, D. C., and Wm. D. Riter, Asst. Atty. Gen., for appellants.

Frank J. Loesch, T. J. Scofield, and C. F. Loesch, all of Chicago, Ill., C. B. Heiserman, of Philadelphia, Pa., and E. H. Seneff, of Pittsburgh, Pa., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] Appellee contends that if title 3 makes the decisions of the Labor Board binding upon the carriers, and enforceable by appropriate proceedings, it is unconstitutional. Suffice it to say, there is not here involved any proceeding for the enforcement on the carrier of a decision of the board as to wages or working conditions. Indeed, the action of the board most complained of by appellee was in furtherance of securing an agreement between the carriers and their employees, with the probable alternative that, if ultimately they fail to agree, the board itself will decide upon and prescribe rules and working conditions. If and when this stage is reached, and one or both of the parties refuse to obey the board's decision, it will be time enough to interpose the defense of unconstitutionality to any undertaking to enforce the decision as one binding and conclusive on the parties.

[2] The decree seems to be predicated upon the assumption that the action of the Labor Board in these matters was wholly under the

provisions of section 301 of the Transportation Act, and that in the absence of a joint submission of the dispute to the board it was wholly without jurisdiction. Section 301 imposes the duty on carriers and employees to make all reasonable effort to avoid interruption of operation through disputes between them, and to confer together and reach an agreement wherever possible, and where disputes are not so decided they "shall be referred by the parties thereto to the board which, under the provisions of this title 3, is authorized to hear and decide such disputes."

Sections following must be looked to for creation of the appropriate boards, the scope of their jurisdiction and the manner of its exercise. Section 302 authorizes carriers and their employees by agreement to establish Railroad Boards of Labor Adjustment. Section 303 makes it the duty of the Adjustment Board to hear disputes "involving *only* grievances, rules, or working conditions," not decided as provided in section 301 (which would be by agreement between carriers and employees). This section specifies that the Adjustment Board shall act (1) upon application of the carrier or of an organization of employees whose members are directly interested in the dispute; (2) upon petition of not less than 100 unorganized employees; (3) on the Adjustment Board's own motion; or (4) on request of the Labor Board, when that board is of opinion that the dispute is likely to interrupt commerce. Section 304 establishes the Labor Board. Section 307(a) provides that the Labor Board shall hear and decide disputes concerning grievances, rules, or working conditions where an Adjustment Board certifies that it has failed or will fail to reach a decision, or as to which the Labor Board determines that the Adjustment Board has so failed, or is not using due diligence to consider it. It then provides that, if no Adjustment Board is organized under section 302, the Labor Board may (1) on application of the carrier or organization of employees whose members are interested in the dispute; (2) on petition of not less than 100 unorganized employees; (3) on the Labor Board's own motion, if of opinion that the dispute is likely substantially to interrupt commerce—receive, hear, and decide any such dispute involving grievances, rules, or working conditions, which is not decided under section 301, and which the Adjustment Board would be required to hear and decide under section 303. Subsection (b) makes provision for the Labor Board, under like enumerated circumstances, to receive, hear, and decide disputes concerning wages, the only distinction between wage disputes and disputes concerning grievances, rules, and working conditions being that for the latter there is the provision of section 302 for the Adjustment Board, which has no jurisdiction or function respecting wage disputes. But, apart from the Adjustment Board provisions applicable to grievances, rules, and working conditions only, the duties and functions of the Labor Board are the same respecting either class of disputes, and where, as here, no Adjustment Board has been created, the functions of the Labor Board do not differ as to wages and rules.

Section 301, by its terms, is applicable to "any dispute between the carrier and the employees." If the concluding sentence of the section, providing that in case the dispute is not decided in conference, it shall be referred "by the parties" thereto to the board authorized to deal

with the dispute, means that unless *both* parties agree so to refer it, the board cannot in any event deal with the matter, title 3 might as well not have been enacted; for, if the right of the board to act depended upon the joint submission of the parties to the dispute, it lay in the power of either party to block utterly any action by the board, by simply refusing to join in the submission. Counsel for appellee do not contend that title 3 is to that effect. In their brief they say:

"Under this section (307) an ex parte submission is provided for and the board is authorized under such a submission to receive and decide disputes involving rules, working conditions, wages, and grievances growing out of the administration thereof. * * * Even if the parties were in hopeless deadlock as to rules, working conditions, and wages and grievances growing out thereof, under section 307 such dispute could have been taken by either party to the Labor Board for determination without the consent of the other party."

This must be so else the manifest intent and purpose of title 3 would fail. If, therefore, the dispute here involved is one which might in any event be cognizable by the Labor Board under title 3, it is not material whether it comes to it under section 301 or under any other or all the sections of the title.

[3, 4] This brings us to appellee's contention that there was here involved no dispute of which the Labor Board could take cognizance, or of which under title 3 it had jurisdiction; and this, indeed, is the ground upon which mainly rests the asserted right of the court to interfere. It is maintained that the Transportation Act ended the railroad administration, and that thereupon jurisdiction over rules and working conditions was primarily with the carrier; that it might adopt such as it saw fit, and unless complaint was made by employees, and a dispute thus arose, the Labor Board had no right to interfere.

It has been above pointed out that for a considerable time prior to passage of the Transportation Act there was pending and undetermined serious dispute respecting wages and working conditions, and it requires no stretch of imagination to conclude that if, upon the adoption of the Transportation Act, the theretofore existing national agreements respecting rules and working conditions ipso facto ceased, the country would have been confronted by unprecedented danger of interruption to traffic. The condition was serious, and conferences between the highest authorities were in progress up to the very time the Transportation Act was adopted. Immediately upon the organization of the Labor Board it seems that as if by common consent the undetermined disputes were by it taken up and the hearings proceeded. Appellee was one of the parties thereto. Such seemed to be the imminence of the situation that it was deemed best to divide the controversy into two branches, and decision No. 2 recites that it is rendered "upon that portion of this dispute which covers wages and does not deal with working conditions." Verity must be accorded to the finding of the Labor Board in this decision, that the dispute as coming to it involved not only wages, but also rules and working conditions, some of which materially affect wages, and that because of the time required for investigation of all the questions, and the practicability of an early decision of the wage question, "it has been necessary, and both parties to the controversy have indicated it to be their judgment and wish, that the board

should-separate the questions involving rules and working conditions from the wage questions." This indicates clearly that the whole subject was then regarded as before the board, to be dealt with by it.

The Transportation Act changed the law, but it did not change the fact of the pendency of the serious dispute respecting wages and working conditions. The fact that the dispute existed long before the board was created made it none the less a dispute cognizable by the board, if continuing to exist after the board began to function. It is thus apparent that at the very outset this dispute as to rules and working conditions was before the board, and was so treated by both parties to the dispute, including appellee. Under these circumstances it would be immaterial whether it got there by ex parte or joint submission, or on the initiative of the board itself. Title 3 is broad and remedial, and no fine jurisdictional lines should be drawn to circumscribe its scope or by procedural technicalities to limit its application. Assuming the truth of the recitals of fact in decision No. 2, if instead of dividing the controversy the board had, at the hearing of the wage dispute, also heard the dispute concerning rules and working conditions and decided it with the other, it would scarcely have been contended that it had less jurisdiction to hear the one than it did to hear that which it in fact then heard and determined.

[5] This will answer also appellee's contention that the Labor Board had no power to order (as in decision No. 2) that existing rules and working conditions, until further order, remain as they then were under the national agreement. The whole subject-matter being before it, it could make such temporary order concerning it as in its judgment the exigencies of the case required. There is also the further ground that wages and working conditions are closely interwoven, and the board in fixing the wages in its decision No. 2 predicated its findings thereon upon the basis of "the continuance in full force and effect of the rules, working conditions, and agreements in force under the authority of the United States Railroad Administration." Thus the rules and working conditions entered into the wage, and it was proper for the board to fix the wage with reference to their continuance till changed by agreement or otherwise.

[6] But appellee insists that it did ultimately make an agreement with its employees respecting rules and working conditions, and that these were by it put into force, and no dispute concerning them has arisen, and that the Labor Board is therefore without jurisdiction. Decision No. 119 concerning rules and working conditions did not assume to fix them, but called upon employers and employees of the several systems to confer together and agree so far as possible respecting them. If at the time decision No. 119 was promulgated the dispute as to rules and working conditions was in fact pending before the board, it was entirely proper for the board to request the parties to confer, and, if possible to agree, without thereby losing its jurisdiction over the controversy. If, pursuant to the request, or perhaps even without request, they had gotten together and agreed, there would to that extent be no further dispute. But it is apparent from decision No. 119 that included in the controversy over rules and working conditions was the question as to who would represent the employees upon such confer-

ences, the carriers contending that it should be only its individual employees, and certain of the employees contending, as for some time theretofore, organizations might represent them. It was doubtless as the result of such contention that in decision No. 119 the board announced in principle that organizations might be selected to represent the employees. Appellee in its bill alleges that, without waiving its contention that the board had no jurisdiction over the matter, it undertook compliance with decision No. 119 by holding an election of its employees, but that in the ballot it prepared it omitted provision for choosing an organization to represent them, and it provided for electing representatives regionally rather than for several crafts covering the entire system, and that with representatives chosen at this election it negotiated rules and working conditions which it put into force.

As above stated, Federation No. 90, after vainly endeavoring to have the ballots make provision for voting for an organization as representative, conducted an election of employees, and thereupon ex parte submitted to the board as a dispute the question of whether the employees of a craft might designate an organization to represent them in negotiations, and whether the law had been complied with in the method pursued by appellee. Appellee answered, and the dispute was orally presented by both parties to the board. Decision No. 218 points out that the contention was made, and not disputed, that a majority of the employees did not vote for the representatives with whom appellee conducted the negotiations, but that the company maintained, since all had opportunity to vote, this made no difference. As pointed out, decision No. 218 held that the company election was void, because it restricted the choice of representatives to natural persons and to actual employees of the road, and it held the employees' election void for restricting the choice to an organization, and directed another election to be held, prescribing the form of ballot as stated.

[7, 8] It is urged for appellee that the matter of the election of representatives by the employees is wholly procedural and is something with which the board is in no wise concerned, and its action in this regard was wholly beyond its jurisdiction. The force of the contention is not apparent. Title 3 confers on the board important duties, and prescribes in section 308 (4) that it "may make regulations necessary for the efficient execution of the functions vested in it by this title." This, alone, if, indeed, in the very nature of things it were not necessarily so, would empower the board to make provision for determining whether those purporting to represent disputants before the board do in fact so represent them. If it is claimed that a pending dispute has been adjusted between the parties to it, it is very essential that the body before whom the dispute is pending assure itself of the authority to so dispose of the controversy of those who purport to act for the parties. This is especially true where one side of the dispute is a body of individuals, such as employees of a great carrier. If, in a controversy pending before a court, its discontinuance is asked because of a settlement between the parties, it is necessary that the court ascertain whether those purporting to represent the parties were in fact such representatives competent to make the agreement. If this is disputed, the court must pass upon that issue; and it is not material whether such an issue

is called "procedural" or otherwise. It arises and must be decided. The same situation is presented to the board where its continued jurisdiction over a pending controversy is denied on the ground of its having been settled between the parties. The representative capacity of the purported representatives was here directly challenged and constituted an issue or dispute which the board had to decide, resulting in decision No. 218 and its subsequent modification. It was eminently proper that the board, either by general rule or otherwise, indicate how in its best judgment such representation should be manifested and the election conducted.

Whether the employees may, if they so choose, be represented by an organization, as held by the board, or whether they may be represented only by individuals who were employees of the same employer, as contended by appellee, is not properly a question for a court. As abstract propositions much may be said on either side. Title 3 in several instances recognizes representation of employees by organizations (sections 302, 303, 307a, 307b, 309, 313), and that was largely the practice with many carriers before government control, and generally so during government control, the national agreements having been so negotiated. But in so far as it was for the board in its discretion to determine who was in fact the authorized representative of bodies of employees, that question, and the manner of its disposition, was for the board; no question here arising as to the board's good faith or its abuse of discretion. Even though the court were of the belief that more just and true representation would result through the method of appellee, it is not for the court to substitute its opinion for that of the board in matters by law committed to the board.

Decision No. 119 directed that the employees choose representatives to confer with the carriers, and decision No. 218 directed the employees to hold an election. This suggests the thought that it is not for the employer to complain of decision No. 218 directing the employees to hold this election. The directed participation of the employer was to enable it to know whether the election was fairly conducted, that all have opportunity to vote, and the ballots cast be truly counted. True it is that, if the employees select as their representatives System Federation No. 90, or some other organization, the carrier may decline to confer. The carrier might also decline to confer with individual representatives for any reason, sound or capricious, the color of their hair or their eyes, or the cut of their clothes, or it might in the first instance give ultimatum to the employees that it would not confer with representatives who had not been in their employ for 10 years or impose any other conditions, reasonable or not. This is merely to state that when representatives are selected either of the parties may, for any cause or no cause at all, decline to enter into conference with them. As applied to this situation, it would simply mean that the board had failed in its effort to dispose of a pending dispute by effecting an agreement between the parties interested, with the result that the dispute still remains with the board, just as if it had not undertaken to bring the parties to a mutual understanding.

In this connection it may be pointed out that the question whether the employees have in fact consented to the rules and working condi-

tions which appellee announced is still pending before the board. In its last order, made on petition of appellee to set aside decision No. 218, the board granted the petitioner's request to present its views. on certain questions, among them as to how the representative capacity of those representing unorganized employees shall be ascertained, and of the adoption or ratification of appellee's rules and working conditions by representatives of the crafts fairly selected by a majority of the employees of the class. An early date for that hearing was set, but it does not appear that it has taken place; the next action shown of record being the filing of the bill herein.

[9] Appellee contends that, wholly regardless of any agreement with its employees, upon the termination of government control it had the right on its own motion to prescribe rules and working conditions, which would be effective until and unless changed pursuant to the provisions of title 3, and that the board was without power over those rules and working conditions which appellee did adopt, unless on complaint as to them and hearing on such complaint. What has been said on the subject of the dispute pending before the board as to rules and working conditions, applies as well to this contention. It seems the hearing on the pending dispute began before the board right after its organization. If after this appellee could by promulgating on its own motion new rules and working conditions oust the board of its right to proceed further with the pending dispute, title 3 would be without practical effect. The carrier could in any pending dispute, whether on rules or wages, put forth its own rules or wage scale, and straightway the authority of the board over the dispute pending before it would be gone. The undertaking of the board to have the parties agree did not withdraw from it the dispute, and neither did the notice of May 3, 1920, of the chairman of the Association of Railway Executives to the labor organizations that that association had made recommendation to the member roads (which included appellee) that negotiations respecting continuance of the national agreements and interpretations thereof be handled by negotiation between the management and employees of each road.

Under the foregoing views it follows that the Labor Board did not as to the matters involved transcend its power and functions under title 3, and that relief under the bill should have been denied. It will not be necessary to consider the contention, earnestly pressed for appellant, that the action is in effect one against the United States, which has not given its consent thereto, and must for that reason be dismissed.

The decree of the District Court is reversed, with direction to dismiss the bill.